UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>METROPOLITAN MORTGAGE & SECURITIES CO., INC.,<br><br>    Debtor. | Jointly Administered Under No. 04-00757-W11 |
| In re:<br><br>SUMMIT SECURITIES, INC.,<br><br>    Debtor. | |
| METROPOLITAN INVESTMENT SECURITIES, INC.,<br><br>    Debtor. | No. 04-00756-W1B |
| METROPOLITAN MORTGAGE & SECURITIES CO., INC., SUMMIT SECURITIES, INC., and BRUCE BOYDEN, as Trustee for the Chapter 7 estate of METROPOLITAN INVESTMENT SECURITIES, INC.,<br><br>    Plaintiffs,<br><br>vs.<br><br>KEITH CAUVEL and MARJORIE CAUVEL, husband and wife, et al.,<br><br>    Defendants. | Adversary No. A04-00061-W11<br><br>FILED<br>JUN 20 2005<br>T.S. McGREGOR, CLERK<br>U.S. BANKRUPTCY COURT<br>EASTERN DISTRICT OF WASHINGTON<br><br>MEMORANDUM DECISION RE: PLAINTIFFS' AND INTERVENING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |

PATRICIA C. WILLIAMS, Bankruptcy Judge:

    This controversy arises out of two conflicting legal philosophies; one found in insurance law and one found in bankruptcy law. When multiple claims exist against an insurance policy, the distribution scheme is based upon a race with the fleetest claimant winning the policy proceeds. When multiple

MEMORANDUM DECISION RE: . . . . - 1

claims in bankruptcy exist against an insolvent debtor, the distribution scheme is based upon equitable distribution. When the asset to be distributed is insurance proceeds arising from an insurance policy held by the debtor, those very different philosophies may be in conflict.

## FACTS

This controversy involves three debtors; the combined Chapter 11 proceedings of Summit Securities, Inc. and Metropolitan Mortgage & Securities Co., Inc., and the Chapter 7 proceeding of Metropolitan Investment Securities, Inc. There are four insurance policies at issue. Two of these policies are referred to as the D&O policies and two of these policies are referred to as the E&O policies. The D&O policies are the National Union policy with limits of $10,000,000 and the excess St. Paul Mercury Insurance policy with limits of $5,000,000. The E&O policies relate to broker members of the National Association of Securities Dealers (hereinafter referred to as "NASD") who dealt with securities issued by the debtors. The E&O policies regarding the NASD brokers are the AIG policy with limits of $10,000,000 and the excess Chubb policy for $2,000,000.

Simplistically, the debtors and their affiliates and subsidiaries are named insureds under all the policies. The D&O policies insure payment of claims against the debtors and their affiliates, payment of claims made against the debtors' respective directors and officers, and payment to the debtors for any indemnification claims which may be made against them by their directors and officers. The debtors as named insureds also have the right to seek payment of certain types of claims, such as loss

MEMORANDUM DECISION RE: . . . . - 2

caused by negligent acts of officers. Again, very simplistically, the same is true of the E&O policies which also include the NASD brokers as insureds. There are several lawsuits pending in various state and federal courts on behalf of hundreds of plaintiffs against the directors and officers alleging violations of securities law, fraud and similar wrongful acts. There are five lawsuits pending against various directors and officers and affiliates alleging wrongful conduct as to certain employees of the debtors. There are dozens of lawsuits and NASD arbitration proceedings pending on behalf of hundreds of plaintiffs against dozens of NASD brokers associated with the debtors which allege violation of securities law and similar wrongful acts. Additional claims are known to exist for which no litigation or arbitration has yet been commenced.

Under the terms of the policies, the directors and officers and NASD brokers and other insured defendants are entitled to have their costs of defense paid by the insurance carriers from the policy limits. The policies are commonly referred to as "wasting policies" or "burning candle policies," meaning that as the litigation continues, the amount available to a successful plaintiff under the policy is being reduced by the costs of defense of the litigation. Because of the number of lawsuits and arbitrations and the number of third-parties seeking recovery, it is quite likely that the limits of these policies will be exhausted before the majority of the claims are fully litigated. Earlier in the bankruptcy cases, a motion to lift stay was filed requesting that policy proceeds be distributed to reimburse the costs incurred by certain non-debtor co-insureds in defending against third-party

MEMORANDUM DECISION RE: . . . . - 3

claims. The question of applicability of the automatic stay was reserved for determination in this adversary proceeding. With Court permission, a procedure was developed whereby defendants' counsel circulate and file with the Bankruptcy Court requests for reimbursement under the policies before submitting the same to the insurance carriers for payment. When last reviewed, the filings indicated that in the course of about 14 months nearly $2,300,000 has been sought as costs of defense. The amount currently reflected by the pleadings is relatively low as an agreement was reached among the Creditors' Committees in the Chapter 11s, the Chapter 7 Trustee and the defendants' counsel and most of the third-party claimants to "stand still" in the pending litigation and arbitrations.

The debtors filed this action seeking an injunction to stay all litigation and arbitration on March 22, 2004. As the litigation and arbitration proceedings proliferated, so has the number of parties to the adversary proceeding. Objections to the granting of injunctive relief were filed at various times by various claimants, but since many claimants then agreed to the "stand still," the request for injunctive relief was not noted for hearing until March 8, 2005. At that time, various counsel for various claimants indicated that they had initially objected to the preliminary injunction but had withdrawn their objections as they had become persuaded that it was in their clients' best interest to pursue the possibility of a "global settlement" before policy limits were significantly reduced or exhausted by the costs of defending the numerous claims and payment of the first claims ripe for resolution.

MEMORANDUM DECISION RE: . . . . - 4

The efforts of the parties during the past several months have been primarily directed at negotiating a so-called global settlement which would require the insurance carriers to pay the policy limits with various groups of claimants sharing in the policy proceeds on a negotiated basis. At the time of the first hearing for preliminary injunction in March of 2005, counsel for debtors reported, and some claimants' counsel confirmed, that significant progress had been made in negotiating a global settlement and they were cautiously optimistic a settlement would result, although not all claimants had participated in the process.

The March hearing resulted in the imposition of a preliminary injunction scheduled to expire on June 7, 2005. All litigation by third-party claimants against the named insureds under the D&O and E&O policies was enjoined as well as litigation among the named insureds. The question of the applicability of the automatic stay was not addressed due to the imposition of the preliminary injunction. Upon expiration of the preliminary injunction on June 7, 2005, another hearing was held to consider the debtors' position that the automatic stay precludes the prosecution of claims against the policy proceeds and to determine if the circumstances regarding a global settlement had changed. As of that hearing, it was apparent that no global settlement would occur.

The pending request of the debtors is a determination that the proceeds of the insurance policies are property of the estate and that the suits and arbitration proceedings are stayed under 11 U.S.C. § 362(a). If the automatic stay is inapplicable, the debtors alternatively argue the preliminary injunction entered on

MEMORANDUM DECISION RE: . . . . - 5

March 29, 2005 should be extended. The insurance carriers have indicated that an interpleader will be commenced and policy proceeds paid into the registry of the Court. There may be some issues regarding policy coverage for particular types of claims or for specific claims, but the total pending claims are approximately $600,000,000. Those claims for which no coverage issues exist far exceed the total policy limits. To date, no such interpleader has been filed.

Metropolitan Mortgage and Summit have filed a joint liquidating plan. The plan, as proposed, establishes a liquidation trust. The liquidation trustee would be appointed to pursue some unrelated suits on behalf of the debtors as well as the debtors' claims under these policies, i.e., claims the estates may directly hold against the directors and officers and other insureds as well as claims against the policies for the costs of indemnifying directors and officers, brokers and other insureds. The three debtors also hold claims for reimbursement from the proceeds for expenses actually incurred by the estates for responding to the investigations by various securities law agencies and for costs incurred due to unrelated officer negligence. Those claims for reimbursement of out-of-pocket costs total approximately $3,400,000. Arguably, the policy proceeds would be available to pay claims held by the debtors thus resulting in additional funds to pay all creditors.

### ISSUE

Are the policy proceeds property of the estate?

MEMORANDUM DECISION RE: . . . . - 6

## ANALYSIS

11 U.S.C. § 362(a)(3) precludes "any act to obtain possession of property of the estate." Property of the estate is defined in § 541 as "all legal or equitable interests of the debtor in property (wherever located) as of the commencement of the case." 11 U.S.C. § 541(a)(1). It includes intangible or contingent interests of the debtor as well as intangible property itself. If these insurance proceeds are property of the bankruptcy estates, the litigation and arbitration proceedings, to the extent they seek monetary judgments or reach monetary settlements payable from the proceeds, would be acts to obtain property of the estate. To the extent the third-party defendants in the litigation and arbitration proceedings request reimbursement of defense costs from the insurance proceeds, such requests would be acts to obtain property of the estate.

The applicability of § 541 to proceeds of insurance policies is not yet a settled question in the Ninth Circuit. It has been determined that insurance policies are property of the estate. In *In re Minoco Group of Companies, Ltd.*, 799 F.2d 517 (9th Cir. 1986), the court held that D&O insurance policies were property of the estate. The court reasoned that since the estate was worth more with the policies than without them, they constituted property of the estate. The policies insured the debtor for any indemnity claims against it by its directors and officers as well as insuring the directors and officers against third-party claims. The court concluded that the all-inclusive purpose of § 541(a) required all interests of the debtor in property, even interests which were contingent or not yet realized, to become subject to the

MEMORANDUM DECISION RE: . . . . - 7

reorganization process.

In 1990, in *In re Circle K Corp.*, 121 B.R. 257 (Bankr. D. Ariz. 1990), the court, relying on *Minoco*, held that D&O insurance policies and proceeds were property of the estate. The court reasoned that since the policies at issue were indemnity policies and not just liability policies, the debtor had a right to the proceeds. Consistent with *Minoco*, the estate was worth more with the policies and proceeds than without them. Those policies were also "wasting" or "burning candle" policies. As the defense costs exhaust the policy limits, the estate asset was depleted which increased the debtor's exposure to third-party claims and decreased realization of the debtor's claims against the proceeds. Thus, the court concluded that the debtor had an interest in the proceeds rendering the proceeds property of the estate as defined in 11 U.S.C. § 541.

In 1997, the Bankruptcy Appellate Panel, in *In re Spaulding Composites Co., Inc.*, 207 B.R. 899 (B.A.P. 9th Cir. 1997), concluded that certain insurance policies themselves were property of the estate but that the proceeds were not. The insurance company had brought a state court declaratory judgment action seeking to determine rights of non-debtor co-insureds in the policy proceeds. The precise issue presented was whether that declaratory judgment action violated the automatic stay as the debtor was also an insured under the policy. The conclusion was that the commencement of the state court action did not violate the stay. That conclusion was based not only upon the fact the debtor was not named in the declaratory judgment action, but also upon the failure to demonstrate that the insurance company's payment of claims

MEMORANDUM DECISION RE: . . . . - 8

brought by the non-debtor insureds would impair the insurance company's ability to satisfy its obligations to the debtor under the policy. In the present controversy, the evidence is overwhelming that satisfaction of the insurance companies' duty to pay claims brought against non-debtor co-insureds, including satisfaction of the defense costs being incurred by the co-insureds, will render it impossible to satisfy the claims against the proceeds held by the debtors.

It is the general rule that the automatic stay of § 362(a)(1) and (a)(3) is available only to debtors and not to third-party defendants or co-defendants. This general principle has been extended by some courts to situations where a potential judgment against the individual insured under a D&O policy may effectively be a judgment against the debtor due to existing indemnification provisions contained within the policies. *See A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, *cert. denied*, 479 U.S. 876 (1986); *In re Eagle-Picher Industries, Inc.*, 963 F.2d 855 (6th Cir. 1992). Similarly, certain courts have extended the protection of the automatic stay in circumstances where collection actions against non-debtor parties creates an "identity of interests" with the debtor such that a judgment against non-debtor defendants becomes in effect, a claim against the debtor for indemnification. *In re Family Health Services, Inc.*, 105 B.R. 937 (Bankr. C.D. Cal. 1989). *See also*, *A.H. Robbins Co., supra*. Finally, § 362(a)(3) has been used to stay actions against a debtor's partners to prevent parties from proceeding in an action that indirectly affects the debtor's property interest or attempts to obtain possession of property of the estate. *In re Bialac*, 712 F.2d 426 (9th Cir. 1983). That

MEMORANDUM DECISION RE: . . . . - 9

decision involved a debtor's undivided one-sixth interest in a promissory note. The analysis focused on the debtor's right to redeem the note after the creditor foreclosed on the five-sixth interest in the note held by non-debtors. The conclusion was that the right to redeem, although intangible and of unknown value, constituted property of the estate.

The debtors, their affiliates, subsidiaries, officers and directors and the NASD brokers are named insureds under the policies. As such, each has the right to utilize the policy proceeds to satisfy claims by third-party claimants. The debtors also have the right to utilize the policy proceeds to satisfy claims the debtors may have against co-insureds and to satisfy requests for indemnification made by the directors and officers. The debtors also have a non-derivative right to receive proceeds to compensate for the costs of responding to certain investigations by regulatory agencies. Realization of the debtors' legal interests is contingent upon the debtors meeting conditions established by the policy for the bringing of claims and those legal interests are not yet in the form of monetary recovery. However, § 541 renders a legal interest in property, property of the estate, and does not require that legal interest to be reduced to a monetary amount nor to be absolute and non-contingent.

## CONCLUSION

Lacking controlling precedent on the issue of whether or not the policies and proceeds at issue in this case are property of the estate, this Court is inclined to follow the analysis found in *In re Circle K Corp.* It is this Court's opinion that not only are the insurance policies property of the estate, but that the proceeds

MEMORANDUM DECISION RE: . . . . - 10

are also property of the estate because the estate is worth more with them than without them and because the debtors hold claims payable from the proceeds.

The debtors and all other insureds have undivided, unliquidated interests in the identical asset, i.e., the policy proceeds. Continued diminution of those proceeds affects the debtors' interests in and rights to recover the proceeds. The stay prevents any action which affects the debtors' interests in the proceeds. This is consistent with and necessary to promote the fundamental bankruptcy principles of preserving estate property and ensuring ratable distribution to creditors.

Under principles of insurance law, all entities or persons having an interest in the policy proceeds would engage in a race to judgment or settlement with the fleetest claimants realizing upon their interest while the slower claimants were deprived of their interest. Such a result is contrary to the fundamental principle of bankruptcy law that all of the debtors' interests in property are to be equitably distributed. The problem is worsened in this case by the fact that the cost of determining each claimant's interest in the policy proceeds may deplete the proceeds before all but the very fleetest claimants recover.

Therefore, this Court concludes that the debtors hold legal interests in the insurance proceeds of the four policies described above which interests are of value to the estate. The proceeds are property of the debtors' estates and are subject to the protections afforded by 11 U.S.C. §§ 362(a)(3). This renders it unnecessary to address the alternative argument that if the proceeds are not property of the estate and the automatic stay is therefore

inapplicable, an injunction should be entered to stay prosecution of the various claims against the proceeds.

Finally, there is a fifth insurance policy also at issue. It is a policy issued by Arch Insurance Company which provides coverage to approximately five NASD brokers who are specifically named as insureds under that policy. The amount of coverage is in dispute as the insurance company maintains that coverage is limited to a maximum of $2 million whereas the NASD brokers maintain the coverage is for a maximum of $2 million for each insured. None of the debtors, their affiliates or subsidiaries are named insured under the Arch policy. None of the debtors have any right or claim to any of the policy proceeds. The debtors hold no legal interest in the proceeds of the Arch policy. Consequently, the Arch policy does not constitute property of the estate.[1]

DATED this 20th day of June, 2005.

PATRICIA C. WILLIAMS
Bankruptcy Judge

---

[1] The five NASD brokers insured under the ARCH policy are among the dozens of NASD brokers covered by the other E&O policies. The Arch policy imposes a duty to defend on the insurance company but it is not a "wasting" or "burning candle" policy as the costs of defense do not reduce the proceeds available to pay claims. The evidence indicates that Arch maintains that half of the costs of defense incurred under the Arch policy should be paid from the proceeds of the other E&O policies which constitute property of the estate. This opinion does not address that issue. Distribution of the E&O policy proceeds, for payment of claims or costs of defense or for any reason, must await later determination.

MEMORANDUM DECISION RE: . . . - 12